In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00038-CR

                                                ______________________________

 

 

                              CALVIN WAYNE BURNHAM,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 123rd
Judicial District Court

                                                             Panola County, Texas

                                                       Trial Court
No. 2005-C-0001

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Calvin
Wayne Burnham was charged with four counts of aggravated sexual assault and
four counts of indecency with a child, his stepdaughter.[1]  Pursuant to a plea of guilty on all counts,
he was placed on deferred adjudication community supervision for a period of ten
years.  Burnham appeals the trial court’s
subsequent revocation of community supervision, adjudication of guilt, and
resulting sentence of fifty years’ imprisonment for each aggravated sexual
assault and twenty years’ imprisonment for each count of indecency with a
child.  He claims that the trial court
erred in considering evidence resulting from a polygraph examination, “erred in
adjudicating the Appellant guilty based on evidence received at a hearing that
had occurred over seven months earlier,” and that the evidence was insufficient
to demonstrate he violated a condition of his community supervision.  We affirm the trial court’s judgment.  

I.          Standard of Review 

            The
determination of an adjudication of guilt is reviewable in the same manner as
that used to determine whether sufficient evidence supported the trial court’s
decision to revoke community supervision. 
See Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp.
2010).  While the decision to revoke
community supervision rests within the discretion of the trial court, it is not
absolute.  In re T.R.S., 115 S.W.3d 318, 320 (Tex. App.––Texarkana 2003, no
pet.).  To revoke community supervision,
the State must prove every element of at least one ground for revocation by a
preponderance of the evidence.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 10 (Vernon Supp. 2010); T.R.S., 115
S.W.3d at 320; Johnson v. State, 943
S.W.2d 83, 85 (Tex. App.––Houston [1st Dist.] 1997, no pet.).  “‘Preponderance of the evidence’ has been
defined as the greater weight and degree of credible testimony.”  T.R.S.,
115 S.W.3d at 320.

            In
a revocation hearing, the trial judge is the sole trier of the facts and
determines the credibility of the witnesses and the weight to be given to the
testimony.  T.R.S., 115 S.W.3d at 321; Lee
v. State, 952 S.W.2d 894, 897 (Tex. App.––Dallas 1997, no pet.); Johnson, 943 S.W.2d at 85.  The judge may accept or reject any or all of
a witness’s testimony.  T.R.S., 115 S.W.3d at 321 (citing Mattias v. State, 731 S.W.2d 936, 940
(Tex. Crim. App. 1987)).  Considering the
unique nature of a revocation hearing and the trial court’s broad discretion in
the proceedings, the general standards for reviewing sufficiency do not
apply.  Pierce v. State, 113 S.W.3d 431, 436 (Tex. App.––Texarkana 2003,
pet. ref’d).  Instead, we review the
trial court’s decision regarding community supervision revocation for an abuse
of discretion and examine the evidence in a light most favorable to the trial
court’s order.  T.R.S., 115 S.W.3d at 321; Garrett
v. State, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); Pierce, 113 S.W.3d at 436. 
If the State’s proof is sufficient to prove any one of the alleged
community supervision violations, the revocation should be affirmed.  T.R.S.,
115 S.W.3d at 321 (citing Stevens v. State,
900 S.W.2d 348, 351 (Tex. App.––Texarkana 1995, pet. ref’d)); Pierce, 113 S.W.3d at 436.

II.        Court Could Consider Evidence from
Hearing on First Motion to Adjudicate Guilt

 

            As
a preliminary matter, Burnham complains that the trial court improperly considered
evidence from a hearing on the State’s first amended motion to adjudicate
guilt, in which his competency was timely questioned.  At the beginning of the hearing, the trial
court appointed Dr. Frank S. Murphy to examine Burnham.  Due to the requested competency examination,
Burnham’s counsel told the court he would not be “able to go forward today” and
requested a continuance of the hearing. 
The trial court granted the continuance, but allowed Kelly B. Hendricks,
the polygraph examiner, to testify because he had travelled 180 miles to attend
the hearing scheduled that day.  Counsel
was allowed to reserve objections to the testimony.  After the hearing, Dr. Murphy concluded that
Burnham was competent, but recommended treatment for bipolar disorder,
prompting agreement between Burnham and the State to “reset” the hearing for a “status
evaluation” at a later date.  Prior to
the status evaluation, the State filed a second amended motion to adjudicate
guilt.  

            Burnham
argues that the trial court erred in considering Hendricks’ testimony during
the hearing on the first motion to adjudicate, before resolving competency
issues.  To support his argument, Burnham
cites Rogers v. State.  640 S.W.2d 248 (Tex. Crim. App. [Panel Op.] 1981).  In Rogers,
the court found the trial court was without authority to subsequently revoke
community supervision in the absence of allegations or proof of subsequent
violations where it had previously decided to continue the defendant upon
community supervision.  Id. at 252 (op. on reh’g); Rains v. State, 678 S.W.2d 308 (Tex.
App.––Fort Worth 1984, pet. ref’d) (same). 
In other words, in the absence of other allegations, a trial court
cannot simply change its mind and revoke community supervision once it has
decided not to do so.  Here, because the
revocation hearing was reset pursuant to agreement, and the second amended
motion to revoke contained new allegations, Rogers
does not apply.  Bersuch v. State, 304 S.W.3d 547, 548 (Tex. App.––Waco 2009, pet. ref’d).  

            Instead,
the Texas Court of Criminal Appeals has held that in a second revocation
hearing, a trial judge may take judicial notice of evidence obtained in a prior
revocation proceeding, provided that he presided over both hearings.  Torres
v. State, 595 S.W.2d 537 (Tex. Crim. App. [Panel Op.] 1980); see Cisneros v. State, 697 S.W.2d 718,
720 (Tex. App.––Corpus Christi 1985, no pet.). 
The same trial judge presided over both motions to adjudicate
guilt.  Thus, the trial court did not err
in considering evidence obtained at the hearing on the first amended motion
when adjudicating guilt based on the State’s second amended motion.  

III.       Polygraph Results Are
Inadmissible 

            Because
of their inherent unreliability and tendency to be unduly persuasive, Burnham
is correct in reciting the rule that polygraph examination results are
inadmissible for any purpose in a criminal proceeding on proper objection.  See
Shiflet v. State, 732 S.W.2d 622, 630 (Tex. Crim. App. 1985).  

            There is a
question of whether Burnham failed to preserve the point of error.  Jasso
v. State, 112 S.W.3d 805, 813–14 (Tex. App.––Houston [14th Dist.] 2003,
pet. ref’d).  We note that Hendricks was
allowed to testify with the court’s condition that counsel was able to reserve
objections.  When Burnham’s counsel
specifically objected to the admissibility of the polygraph results, the trial
court stated, “Again, I’m just giving you, Counsel, an opportunity to see what
he’s going to say.  . . . .  You can reserve your objections.  . . . . 
And I’ll note it, and you can be subject to making objections at a later
time.”  The results were “received at
this time just for the limited purpose of [Hendricks’] testimony.”  

            At
the conclusion of the hearing on the second amended motion to adjudicate guilt,
in which the State did not offer the polygraph results, Burnham’s counsel asked
to file a brief with the court addressing concerns that the second amended
motion contained allegations not heard at the hearing.  The judge referenced Hendricks’ testimony and
pointed out that he had “heard nothing at the beginning of this that we were
having any objection to that evidence coming in.”  He further stated, “I was satisfied, since I
haven’t heard anything to the opposite, about the polygraph that was
administered and the admissions he made subsequent to that.”  It is unclear whether the court treated the
results of the polygraph as admitted, and whether it treated counsel’s request
to file a brief as an objection to the results. 


            Nevertheless,
even assuming that the court erroneously admitted the polygraph results over
proper objection, because we hold below that the evidence was sufficient to
demonstrate violation of at least one condition of community supervision,
Burnham was not harmed by its admission. 
See Tex. R. App. P. 44.2(b); Anderson
v. State, 182 S.W.3d 914, 918 (Tex. Crim. App. 2006).  

IV.       Sufficient
Evidence Supported the Trial Court’s Judgment 

            The
State’s second amended motion to adjudicate guilt claimed that Burnham violated
the following conditions of community supervision requiring him to:  maintain suitable employment; pay an assessed
$1,336.00 fine at a rate of $15.00 per month; pay community supervision fees of
$50.00 each month; submit to sex offender treatment; and commit to sex offender
registration requirements.  

            At
the hearing on the second amended motion to adjudicate guilt, administrative
deputy Heather Green testified that although Burnham was required to report any
change in job status “[n]ot later than the 7th day after the date of the change,”
he failed to do so.  Shelby and Panola
County community supervision officer Heather Brown stated Burnham was laid off
on December 3, 2008, and failed to provide income verification until
November 2, 2009, indicating Burnham had not worked in almost a year.[2]  She claimed Burnham was absent from sex
offender treatment meetings.[3]  Brown also testified Burnham had failed to
pay fines and community supervision fees pursuant to the court’s order.  Without objection, the State admitted
documentation of Burnham’s failure to pay, showing arrearages in each case of
between $75.00–$185.00, totaling $1,140.00, and administrative notes suggesting
Burnham was sent several “failure to pay” notices.[4] 

            Most
importantly, the State also claimed that Burnham violated the conditions of
community supervision requiring him to:  avoid
injurious or vicious habits, including abstaining from the possession or use of
all intoxicating beverages and all unlawful possession of alcohol; refrain from
frequenting places where pornographic materials are sold; refrain from
possessing recorded materials for the purpose of deviant sexual arousal; avoid
contact with the victim’s family; and stay 500 feet from any school.  

            “[T]he
‘result’ of a polygraph examination is the conclusion based on the machine’s
graphic indications as to whether the defendant was lying or telling the truth.”
 Marcum
v. State, 983 S.W.2d 762, 766 (Tex. App.––Houston [14th Dist.] 1998, pet.
ref’d) (citing Castillo v. State, 739
S.W.2d 280, 293 (Tex. Crim. App. 1987)). 
Statements made to a polygraph examiner during such an examination are
generally admissible.[5]  Id.;
Harty v. State, 229 S.W.3d 849, 851
n.2 (Tex. App.––Texarkana 2007, pet. ref’d); see Shiflet, 732 S.W.2d at 623 (statements against interest made
while not in custody admissible).  

            Hendricks
testified that Burnham made several “pre-test” and “post-test” admissions.  Specifically, he admitted to: “consuming wine
at Olive Garden,” viewing “cell phone instant message image photos of girls
sending pictures of their breasts and vaginas . . . about 20 to 30 times”; “frequenting
several area gas stations or convenience stores that display pornography”; and
visiting “his brother’s house in the evening when school is out because his
brother’s house is within 500 feet of a school.”  The examiner testified Burnham “shop[ped] at
the grocery store where the victim’s grandmother is the manager,” but denied
speaking with her.  Burnham also “claim[ed]
that he ha[d] a prescription for Hydrocodone,” and “admit[ted] possession of
crystal methamphetamine when he poured his dad’s crystal methamphetamine out on
the ground once whenever he was trying to help his dad get off crystal meth.” 

            The
admissions to Hendricks were sufficient for the trial court to find, in its
discretion as sole fact-finder, that Burnham violated at least one condition of
his community supervision by a preponderance of the evidence.  See
T.R.S., 115 S.W.3d at 321.  Thus, we
affirm the revocation and adjudication of guilt.  Id.


V.        Conclusion

            We
affirm the trial court’s judgment. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:         December
14, 2010

Date Decided:             December
15, 2010

 

Do Not Publish

 

 




 

OPINION
ON REHEARING

 

            In
the above-captioned case, we affirmed Calvin Wayne Burnham’s conviction of four
counts of aggravated sexual assault and four counts of indecency with a child,
his stepdaughter.[6]  Burnham has moved that we rehear the matter,
alleging that the State violated Article 42.12, Section 21(b) of the Texas Code
of Criminal Procedure in amending its motion to adjudicate guilt “after the
commencement of taking evidence at the hearing.”[7]  Tex.
Code Crim. Proc. Ann. art. 42.12, § 21(b) (Vernon Supp. 2010). 

            To
recapitulate, the State filed its first amended[8]
motion to adjudicate guilt on May 13, 2009. 
Among other allegations, the first amended motion alleged Burnham
violated conditions of community supervision requiring him to:  avoid injurious or vicious habits, including
abstaining from the possession or use of all intoxicating beverages and all
unlawful possession of alcohol; refrain from frequenting places where
pornographic materials are sold; refrain from possessing recorded materials for
the purpose of deviant sexual arousal; avoid contact with the victim’s family;
and stay 500 feet from any school.  The
first amended motion to adjudicate stated that Burnham admitted to polygraph
examiner Kelly B. Hendricks that he had:  (1) consumed alcohol at an Olive Garden
restaurant; (2) possessed methamphetamine; (3) stopped at a grocery store where
the victim’s grandmother worked; (4) gone into gas stations and convenience
stores that displayed pornography; (5) reviewed “cell phone instant message
photos of breasts and vaginas 20 to 30 times”; (6) visited his brother’s home,
which was within 500 feet of a local school; and (7) ingested Hydrocodone,
although he had previously reported to his community supervision officer that
he was not taking any medications.  

            At
the hearing on the first amended motion to adjudicate guilt on May 29, 2009,
Burnham’s counsel raised issues of competency, and the trial court appointed
Dr. Frank S. Murphy to examine Burnham. 
The trial court granted a request for continuance made by Burnham’s
counsel, but allowed the polygraph examiner to testify because he had travelled
180 miles to attend the hearing scheduled that day.  Counsel was allowed to reserve objections to
the testimony.  Dr. Murphy concluded
Burnham was competent, but recommended treatment for bipolar disorder.  At a setting on August 21, 2009, Burnham and
the State agreed to “reset” the hearing for a “status evaluation” at a later
date due to Burnham’s mental health issues, and the trial court was not asked
to exercise its discretion to rule on the first amended motion.[9]  Prior to the status evaluation, the State
filed a second amended motion to adjudicate guilt, adding a single allegation
that Burnham failed to remain at his residence for the duration of Halloween
night, as required by his “Halloween 2009 Guidelines Contract” made a part of
his conditions of community supervision. 


            Article
42.12, Section 21(b) of the Texas Code of Criminal Procedure states that “in no
event may the state amend the motion after the commencement of taking evidence
at the hearing.”  Tex. Code Crim. Proc. Ann. art. 42.12, § 21(b).  Burnham complains on rehearing that the State
violated Section 21(b).  However, in
order for Burnham to have preserved this error for our review, he was required
to lodge a timely, specific objection in front of the trial court.  Tex. R. App. P. 33.1; Rogers, 640 S.W.2d at 263 (op. on second reh’g); see Burns v. State, 835 S.W.2d 733, 735
(Tex. App.––Corpus Christi 1992, pet. ref’d).[10]  We find this was not done. 

            During
the January 2010 hearing on the State’s second amended motion to adjudicate
guilt, Burnham’s attorney Clement Dunn announced “ready” on Burnham’s
behalf.  After evidence was presented and
concluded, the following transpired:  

            MR.
DUNN:  Your Honor, I’m going to make an
unusual request, if I may.  Before the
Court makes a decision on adjudication, would the Court be willing to entertain
a brief that we would submit?

 

            THE
COURT:  Well, I don’t see what -- from
the evidence I’ve heard this morning, is there something you need to point out
to me?

 

            MR.
DUNN:  Well, there are several things
that I would point out.  And quite
frankly, to do the best job, perhaps to be of most service to the Court, I
would like a little bit of time to research a little bit of case law and be
able to --

 

            THE
COURT:  Well, what kind of --

 

            MR.
DUNN:  -- be able to articulate some of
these points a little better than I can right now.  

 

            .
. . .

 

            MR.
DUNN:  . . . . My concern focuses, Your
Honor, in part on coming into court today and having a hearing on what is
styled, I believe, a second amended motion, which was filed November 2nd of
2009 and, within that motion, there are allegations that were not heard
today.  There were previous hearings that
occurred before this motion was filed.  

 

            THE
COURT:  There certainly was.  I agree. 
I recall it.  I was here.  There was a polygraph expert here that gave
him a polygraph back in, I guess, May of last year that testified as to points
1 through, I guess -- what was it Mr. Davidson?  

 

            .
. . . 

 

            THE
COURT:  I think it was probably about
five or six . . . . I know you weren’t benefit of that, but I have heard
nothing at the beginning of this that we were having any objection to that
evidence coming in.  And of course, it
was in under previous counsel.  

            And
then, of course, to be frank with you, I think the State was trying their best
to try to help your client out in giving him another chance and getting some
counseling for this. . . . 

 

            THE
COURT:  . . . . I was satisfied, since I
haven’t heard anything to the opposite, about the polygraph that was
administered and the admissions he made subsequent to that. . . . I’m going to
go ahead and pronounce judgment today. . . .

 

            The
court then advised “if you point out something that we need to address on
guilt-innocence, then I’ll be glad to reconsider that.”  Dunn replied, “Your Honor, I appreciate the
opportunity.  With that understanding for
appellate purposes if we ever get to that point, I might say that I’ll defer
any objections and advise the Court of those in the next few days, if that’s
acceptable.”  No objections, briefs, or
motions regarding Section 21(b) were filed. 

            During
Burnham’s sentencing, the court inquired, “Do you have anything to say at this
time why the sentence should not be pronounced against you?”  Dunn replied, “We do not, Your Honor.”  

            The
purpose of requiring timely, specific objections is to apprise the trial court
of a party’s complaint and thereby afford the court an opportunity to rule at a
time when the error could have been avoided or corrected by the trial
court.  See Gibson v. State, 726 S.W.2d 129, 131 (Tex. Crim. App.
1987).  After receiving the second
amended motion to adjudicate guilt, Burnham did not file a motion to quash or
otherwise complain to the trial court that the State could not amend its motion
because evidence had already been received. 
Burnham also voiced no objection at the beginning of the hearing.  Instead, he announced that he was ready to
proceed, evidence was heard, and the parties rested before any complaint was
voiced.  Burnham’s objection was too
general to raise the issue of a Section 21(b) violation to the trial
court.  Rather, it appears that the trial
court interpreted it as a complaint on the sufficiency of the evidence
presented at the hearing on the second motion to adjudicate guilt.  Thus, the record does not demonstrate an
express or implied ruling by the trial court finding that the State did not
violate Section 21(b) so that we can review the matter.  Also, Burnham did not file a motion to arrest
judgment or complain about the trial court’s procedure in a motion for new
trial.  Therefore, we find Burnham’s main
complaint in his motion for rehearing was not preserved.  It is overruled.[11]


            We
deny the motion for rehearing. 

 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

 

Date: 
January 26, 2011

 

Do Not Publish











[1]Burnham
appeals from this cause number and judgments entered in cause numbers 06-10-00039-CR
through 06-10-00045-CR.  





[2]Burnham
argues that his condition of community supervision did not require him to
maintain suitable employment if searching for a job.  The condition required him to “[m]aintain
suitable employment or educational/vocational status; [i]f unemployed and not a
student, comply with the instructions of the Supervision Officer concerning
employment search, education or training, including providing documentation of
such activities.”  Though the officer
testified Burnham “had tried” to find employment, the court was free to
conclude his one-year hiatus from employment of any sort constituted
noncompliance with the condition. 

 





[3]After
Brown testified without objection that Burnham failed to attend sex offender
treatment classes, she was asked what dates he failed to attend.  Because Brown referred to the “records” to
determine these dates, Burnham lodged a hearsay objection for lack of “direct
knowledge.”  

 





[4]Burnham
argues that the trial court failed to establish that he was able to pay the
fines and fees.  Tex. Code Crim. Proc. Ann. art. 42.12, § 21(c) (Vernon Supp. 2010).  The record demonstrates Burnham was indigent
and was unemployed until November 2009.  

 





[5]Burnham’s
counsel objected “to any statements that were made to the examiner,” although
the basis for the objection was not stated. 
He further lodged an objection that the examiner’s “total testimony
[w]as a violation of Article 38.22.” 
However, because submission to a polygraph examination pursuant to
conditions of community supervision is not a custodial interrogation, Article
38.22 does not apply.  Marcum, 983 S.W.2d at 766. 





[6]Burnham
appealed from this cause number and judgments entered in cause numbers 06-10-00039-CR
through 06-10-00045-CR.  

 





[7]Burnham
discussed Section 21(b) in reference to his point of error by emphasizing that
the trial court “erred in adjudicating the Appellant guilty based on evidence
received at a hearing that had occurred over seven months earlier.”  He argued that because the court should not
have considered the polygraph examiner’s testimony, there “was no
evidence introduced” on these matters during the hearing on the second amended
motion to adjudicate, and the additional allegation contained within the second
amended motion to adjudicate guilt should not have been considered, Burnham
should not have been adjudicated guilty. 
We disposed of this point of error in our original opinion by holding
that the trial court could consider evidence from the previous hearing.  Burnham now places emphasis on the filing of
the intervening motion to adjudicate guilt. 
On rehearing, we address Burnham’s failure to preserve error on this
specific Section 21(b) objection.  

 





[8]An
original motion to adjudicate guilt was filed on April 3, 2009.  





[9]Burnham
also asks the Court to re-evaluate his point of error complaining that the
trial court erred in continuing, and then subsequently revoking, Burnham’s
community supervision.  He cites the rule
that a trial court is without authority to later revoke community supervision
in the absence of allegations or proof of subsequent violations where it had
previously decided to continue the defendant on community supervision.  Rogers
v. State, 640 S.W.2d 248 (Tex.
Crim. App. [Panel Op.] 1981); Rains v.
State, 678 S.W.2d 308 (Tex. App.––Fort Worth 1984, pet. ref’d).  We pointed out, in our original opinion, that
the first amended motion to adjudicate guilt was reset pursuant to agreement,
and the trial court was not asked to exercise its discretion to make a finding
as to whether Burnham violated his community supervision.  We also stated that because the second
amended motion to adjudicate guilt contained new allegations, Burnham’s cited
cases did not apply.  Bersuch v. State, 304 S.W.3d 547, 548
(Tex. App.––Waco 2009, pet. ref’d).  

 





[10]See also Falana v. State, No.
02-07-00065-CR, 2007 WL 4292390, at *4 n.7 (Tex. App.––Fort Worth Dec. 6, 2007,
no pet.) (not designated for publication) (citing Anderson v. State, Nos. 05-00-01700-CR, 05-00-01701-CR,
05-00-01702-CR, 2001 WL 1346309, at *2 (Tex. App.––Dallas Nov. 2, 2001, no pet.)
(not designated for publication)); Brietzke
v. State, No. 04-99-00518-CR, 2000 WL 682564, at *2 (Tex. App.––San Antonio
May 17, 2000, no pet.) (not designated for publication); Peña v. State, No. 04-98-00546-CR, 1999 WL 107068, at *2 (Tex.
App.––San Antonio Mar. 3, 1999, pet. ref’d) (not designated for
publication).  Although these unpublished
cases have no precedential
value, we may take guidance from them “as an aid in developing reasoning that may be employed.”  Carrillo v. State, 98 S.W.3d 789, 794 (Tex. App.––Amarillo
2003, pet. ref’d).  





[11]Moreover,
the rationale for Section 21(b) is to “prevent the State from adding new or
different grounds for revocation as a result of evidence adduced at the hearing
on that particular motion.”  Washington v. State, 731 S.W.2d 648, 649
(Tex. App.––Houston [1st Dist.] 1987, no pet.); Johnson v. State, 633 S.W.2d 687, 689 (Tex. App.––Amarillo 1982,
pet. ref’d)).  Even if this Court had
concluded that error was preserved, we would next determine it was
harmless.  O’Hara v. State, 626 S.W.2d 32, 35 (Tex. Crim. App. [Panel Op.] 1981).  Both the first and second motions to
adjudicate were based upon the same admissions made by Burnham to
Hendricks.  The only additional
allegation in the second amended motion to adjudicate revolved around Burnham’s
failure to remain in his home on the night of October 31, 2009.  This occurrence took place several months
after Hendricks’ testimony.  Thus, the
State’s amended motion was not based upon evidence adduced at the revocation
hearing where Hendricks testified.  Thus,
any error would have been harmless.